Filed 1/26/22  D.A. v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| D.A.,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>      Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>      Real Party in Interest. | A164031<br><br>(Contra Costa County Super. Ct. Nos. J18-00718, J18-00719) |

D.A. (Mother) petitions for extraordinary writ relief after the juvenile court denied her petition for modification under Welfare and Institutions Code section 388 seeking reinstatement of reunification services or placement of her children S.A. and C.A. with her under a plan of family maintenance.[1] We conclude the juvenile court did not abuse its discretion, and accordingly, we deny the petition.

---

[1]     Further statutory references are to the Welfare and Institutions Code unless stated otherwise.

## FACTUAL AND PROCEDURAL BACKGROUND

S.A. and C.A. were the subjects of separate prior child welfare proceedings brought in July 2012 by the Contra Costa County Children and Family Services Bureau (the Bureau) after C.A. tested positive for methamphetamine at birth, and Mother tested positive for methamphetamine and ecstasy. The petitions alleged under section 300, subdivision (b), that S.A. and C.A. were at substantial risk of suffering serious physical harm or illness as a result of Mother's inability to care for them due to her substance abuse.[2] The juvenile court sustained the petitions' allegations, and Mother entered a residential drug treatment program in October 2012. In August 2013, the juvenile court vacated the dependency.

In July 2018, the Bureau filed petitions under section 300, subdivision (b)(1), this time alleging that S.A. (seven years old) and C.A. (six years old) were at substantial risk of serious physical harm or illness because Mother had engaged in domestic violence with her boyfriend in the children's presence and had a history of domestic violence with the children's father. The petitions further alleged that Mother had a substance abuse problem with methamphetamine, as well as a history of mental illness. The children were detained. At the August 2018 jurisdiction hearing, Mother pled no contest to an amended petition that revised the domestic violence allegation to a general allegation, deleted the mental health allegation, and left the substance abuse allegation unchanged. The juvenile court sustained the allegations.

According to the Bureau's disposition report, Mother admitted "she began using both methamphetamine and marijuana at thirteen years old"

---

[2] The petition for S.A. additionally alleged abuse of a sibling (C.A.) under section 300, subdivision (j).

2

and "used both substances daily." To address her addiction, Mother "has moved out of the state (which has helped her the most), attended meetings and entered drug programs."

At the September 2018 disposition hearing, the juvenile court ordered the children placed out of Mother's home with reunification services. Mother was ordered to complete a case plan that included individual counseling, domestic violence counseling, parenting classes, a 12-step program, an inpatient substance abuse program, and drug testing.

In March 2019, the Bureau reported that Mother entered a residential drug treatment program in October 2018 and obtained her certificate of completion in January 2019. Mother had 12 drug tests during the review period, three of which were positive for marijuana, and one for methamphetamine in January 2019. The Bureau further reported that Mother had not maintained contact, and that her case plan compliance was unknown. At the six-month review hearing, the juvenile court continued reunification services for Mother.

In August 2019, the Bureau reported that Mother failed to show up for three drug tests, refused services through a sober living environment, and had not engaged in counseling or psychiatric treatment. The juvenile court again continued reunification services for Mother.

In November 2019, the Bureau reported that Mother was homeless and had moved out of the county to obtain housing. Mother cancelled several visits during the reporting period. She submitted multiple negative results for drug testing and told the Bureau that she was participating in a substance abuse program at Pittsburg Health Clinic, but the Bureau was awaiting confirmation from the provider.

In February 2020, the Bureau recommended termination of services and the setting of a section 366.26 hearing to terminate Mother's parental rights. The Bureau reported that Mother remained homeless and continued to change jobs, seek housing, and participate in supervised visits and substance abuse services, including Contra Costa County Medical Health's "mock intensive outpatient substance abuse treatment program." However, Mother failed to show up for several drug testing appointments and canceled several supervised visits with the children. At the contested 18-month review hearing in March 2020, Mother failed to attend, and the juvenile court terminated reunification services and set a section 366.26 hearing.

The initial section 366.26 hearing resulted in a permanent plan of foster care with a goal of placement with a fit and willing relative. In March 2021, the children were placed with their maternal uncle, and the Bureau reported that the children "developed a positive relationship with [maternal uncle] and his girlfriend[.]" Although Mother continued to participate in supervised visitation with S.A. and C.A., "the [children] have displayed little interest in visiting with the mother. Additionally, [maternal uncle] reports that after the girls' visit with the mother, [S.A.] and [C.A.] appear to give the matter no real importance and have very little share [*sic*] about the visit." The children were observed "to be comfortable in the presence of their uncle and have expressed their wishes to remain in his care. [Maternal uncle] is prepared to provide the girls a permanent home and wants to move forward with adoption [*sic*] he is willing to meet the challenges presented with additional support." In August 2021, the Bureau recommended setting another section 366.26 hearing with a permanent plan of adoption by the maternal uncle. A contested post-permanent plan review hearing was set for October 19, 2021.

4

Mother then filed a section 388 petition seeking reinstatement of reunification services or placement of the children with her under a plan of family maintenance. Mother contended that she had "been engaging in substance abuse counseling services and drug testing, seeing a therapist weekly since March of 2021, is employed and is patiently waiting for housing as she has been chosen to receive housing vouchers in both San Francisco and Butte County. She has also consistently maintained her visits with [S.A.] and her sister [C.A.]" The section 388 petition attached several reports of drug tests from March to September 2021. The March report showed positive results for methamphetamine, while other reports showed positive results for benzodiazepine and/or cannabinoids.

On October 19, 2021, the juvenile court held a combined contested post-permanent plan review and section 388 hearing. Mother testified she has used methamphetamine "[m]ost of [her] life," but claimed she stopped after S.A. and C.A. were removed from her care. Mother further testified she had been seeking substance abuse treatment for "over a year" and had "graduated" from the program. She had also engaged in outpatient services and was living in a homeless shelter that performed random drug testing. She acknowledged, however, that "[t]hey haven't drug tested me."

On cross-examination, Mother was asked about the March 2021 drug test showing positive results for amphetamines and methamphetamines. She testified that the drug test was "for a three-month hair strand test" and that she had been clean since January 5, 2021. Her counsel further explained to the juvenile court that Mother was given benzodiazepine as an anxiety medication while at psychiatric emergency services and was permitted to use cannabis for medical reasons.

Mother further testified she was employed and was awaiting housing vouchers. She had selected a house that was expected to be ready for her soon. She had also completed a parenting class, attended therapy regularly since March 2021, and received dialectical behavior training. She explained that she was prompted to seek therapy in March 2021 due to the COVID-19 lockdown, which caused her to have two breakdowns in January and March or April 2021. She was placed in involuntary hold under section 5150 both times.

Mother acknowledged that after her supervised visits with S.A. and C.A., the children did not express not wanting to leave. Mother was questioned extensively about her ability to care for the children— specifically with S.A.'s medical condition, encopresis. Mother was unaware of what a typical day looked like for S.A. and blamed her lack of knowledge of how to care for the children on the fact that they have not been in her care. Mother acknowledged she had not remained in contact with the social worker after reunification services were terminated but claimed the social worker failed to respond to an e-mail and told Mother to contact her lawyer.

Asked why the requested modification was in the children's best interests, Mother replied, "Because I'm their mother. I mean, they're my reason for even being here. I'm supposed to be — I'm supposed to take care of them myself. They need me. I need them."

After the conclusion of Mother's testimony, the juvenile court denied the section 388 petition. The court found that Mother's testimony regarding drug use was not "credible," as she denied using methamphetamine after the children were removed in July 2018, but admitted during her testimony to using methamphetamine as recently as January 2021. The court recounted the long history of Mother's involvement with the child welfare system, citing

6

a prior dependency case in Alabama in 2011–2012, the prior dependency case after C.A. was born in July 2012, and the sustained allegations of domestic violence that Mother committed in front of the children in the present matter. The court noted Mother's admission that she has been a "lifelong user of methamphetamine up until relatively recently."

The court found that despite Mother's testimony that she had applied for housing, "there's presently no information as to when that housing will be available for her to move in." The court was also concerned about the two section 5150 holds earlier in 2021 and expressed doubt that Mother's underlying mental health problems had been adequately addressed.

The court additionally found that Mother was not prepared to address S.A.'s encopresis, and that Mother's failure to be "kept in the loop" regarding the daily care of the girls was "due to her failure to make substantial efforts to stay in contact with the social worker or her counsel, for that matter, adequately to know what has been going on with her daughters and to keep apprised of their medical condition, their medical needs, and generally what is required to take care of them." While the court found that visits between Mother and the children had generally gone well, the court noted that C.A. and S.A. showed "little interest" in visiting with Mother and "that the visits are not significant to the children."

Based on the foregoing, the court concluded that Mother had failed to show a material change in circumstances. The court was "mindful of the fact that the 10 months in sobriety after a lifetime of addiction is a good beginning, but it is a beginning. And as we all know, the scourge of addiction is a very difficult road with many relapses typical. So I don't think that refraining from methamphetamine for 10 months, given the history in this case, that that adequately protects the children." The court also found the

requested modification was not in the children's best interests because Mother was not capable of caring for their medical needs or daily needs. The court set a section 366.26 hearing for February 15, 2022.

Mother filed timely notices of intent to file a writ petition. In December 2021, Mother filed her petition for extraordinary relief and request for a temporary stay of the February 15, 2022 hearing.

## DISCUSSION

"Section 388 permits the parent of a dependent child to petition the juvenile court for a hearing to modify an earlier order on the basis of changed circumstances or new evidence. (§ 388, subd. (a)(1).) The petitioning party bears the burden of showing that there is new evidence or changed circumstances and that the proposed modification would be in the best interests of the child." (*In re N.F.* (2021) 68 Cal.App.5th 112, 120 (*N.F.*).) Where, as here, the juvenile court holds an evidentiary hearing on the section 388 petition, the petitioning party must make the required showings by a preponderance of the evidence. (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 (*Mickel O.*).) In determining whether the petitioning party has carried its burden, the court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189 (*Justice P.*).) "Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion." (*In re J.C.* (2014) 226 Cal.App.4th 503, 525.)

"Not every change in circumstance can justify modification of a prior order. [Citation.] The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate. [Citations.] In other words, the problem that initially brought the child

8

within the dependency system must be removed or ameliorated. [Citations.] The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612; see *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [requiring "substantial change of circumstances"]; *Mickel O., supra,* 197 Cal.App.4th at p. 615 [requiring change in circumstances to be " 'significant' " in nature].)

"In the context of a substance abuse problem that has repeatedly resisted treatment in the past, a showing of materially changed circumstances requires more than a relatively brief period of sobriety or participation in yet another program." (*N.F., supra,* 68 Cal.App.5th at p. 121, citing *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [seven months of sobriety since last relapse insufficient to show changed circumstances, given parent's history]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 (*Kimberly F.*) ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"].) The appellate courts of this state have often held that when a parent has a history of substance abuse, recent relatively brief sobriety constitutes "changing" rather than "changed" circumstances. (See *In re Alayah J.* (2017) 9 Cal.App.5th 469, 482; *Mickel O., supra,* 197 Cal.App.4th at p. 615.)

The juvenile court here properly found that Mother failed to demonstrate changed circumstances to support modification of the order terminating reunification services. Mother admitted to methamphetamine use since the age of 13, and her methamphetamine abuse led to both the July 2012 dependency matter as well as the instant proceedings. In this context, Mother had to show more than "a relatively brief period of sobriety or participation in yet another program." (*N.F., supra,* 68 Cal.App.5th at

9

p. 121.)  Although Mother points out that she completed a residential drug treatment program in January 2019, she acknowledges this was "not technically a change of circumstances" but contends "it is important for the court to consider the matter as a whole."  We agree the entire factual and procedural history of the case must be considered (see *Justice P.*, *supra*, 123 Cal.App.4th at p. 189), but Mother's prior completion of residential treatment merely serves to highlight her pattern of participating in services and later relapsing.  Indeed, Mother admitted to relapsing as recently as in January 2021.  We do not intend to discount Mother's progress to date in combatting her addiction or suggest she will likely fail—her sobriety from January 2021 to the October 2021 hearing on the section 388 petition shows meaningful promise.  However, we cannot say the juvenile court abused its discretion in concluding that this comparatively brief period of sobriety was indicative of only changing—but not yet changed— circumstances.

We next address whether the juvenile court reasonably determined that granting Mother reunification services or custody of S.A. and C.A. with family maintenance services would not promote the children's best interests.  After reunification services have been bypassed or terminated and the matter set for a section 366.26 hearing, " 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child."  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)  In *Kimberly F.*, the appellate court articulated three factors to consider in evaluating the child's best interests under section 388:  (1) the seriousness of the problem that led to the dependency and the reason for any continuation of that problem; (2) the strength of the child's bond with his or her new caretakers compared with the strength of the child's bond with the parent; and (3) the degree to which the

10

problem leading to the dependency may be easily removed or ameliorated, and the degree to which it actually has been removed or ameliorated. (*In re Kimberly F.*, *supra*, 56 Cal.App.4th at pp. 531–532.)

Application of the *Kimberly F.* factors supports the juvenile court's decision here. Mother's lifelong battle with methamphetamine abuse is a serious problem that has persisted despite her participation in several residential treatment programs over the years. Although she insists that the children's best interests are furthered by residing with her because they have lived with her for most of their lives, we cannot say the juvenile court abused its discretion in concluding otherwise based on the children's growing bond with maternal uncle and their expressed preference to live with him. The court's decision was also supported by the evidence that Mother was not sufficiently apprised of or capable of meeting S.A.'s special medical needs. Given the focus on the children's need for permanence and stability, the juvenile court did not abuse its discretion in concluding that granting Mother's section 388 petition was not in the children's best interests.

### DISPOSITION

The petition for extraordinary writ is denied. The request for a temporary stay is denied as moot. Our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

11

 

                                _____

                                Fujisaki, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Rodríguez, J.

A164031/*D.A. v. Contra Costa County Superior Court*